1

2

3

4

5

6             IN THE UNITED STATES DISTRICT COURT

7               FOR THE DISTRICT OF ARIZONA

8
SAMMY WILLIAMS,                    )
9                                  )
            Petitioner,            )
10                                 )
            v.                     )    CIV 06-0275 PHX EHC (MEA)
11                                 )
DEPUTY WARDEN PERKINS,             )    REPORT AND RECOMMENDATION
12 TERRY GODDARD,                  )
                                   )
13          Respondents.           )
   _____)
14

15 TO THE HONORABLE EARL H. CARROLL:

16         On January 23, 2006, Petitioner, who is in the custody

17 of the State of Arizona, filed a *pro se* petition seeking a writ

18 of habeas corpus pursuant to 42 U.S.C. § 2254, asserting four

19 claims for relief.  Respondents filed an Answer to the Petition

20 ("Answer") on June 30, 2006.  Docket No. 13.  Respondents assert

21 Petitioner did not properly exhaust two of his habeas claims and

22 that Petitioner is not entitled to relief on the merits of the

23 other two habeas claims.  Therefore, Respondents argue, the

24 petition must be denied and dismissed with prejudice.

25         **I Procedural History**

26         Petitioner was charged by the State of Arizona with

27 first-degree felony murder in 2001, regarding events occurring

28 on October 23, 2000.  At his trial in 2003, one of Petitioner's

co-participants, James Harris,[1] testified against Petitioner and received use immunity from prosecution for his testimony. Answer, Exh. F at 63 & passim; Exh. I at 47; Exh. N at 2 n.1. Petitioner's other co-participant, Carissa Morones, pled guilty to second-degree murder, reduced from a charge of first-degree felony murder, in exchange for her testimony at Petitioner's trial. Id., Exh. F at 133-35; Exh. N at 2 n.1.

Petitioner is presumably Hispanic. See id., Exh. N at 7 n.3. Petitioner's male co-participant, Mr. Harris, is Caucasian and was, at the relevant time, apparently a much larger person than Petitioner. Cf. id., Exh. F at 34 & 112 (Mr. Harris and Ms. Morones' testimony Mr. Harris was known by the nickname "Tiny.").

Ms. Morones testified that she, Petitioner, and Mr. Harris traveled to Phoenix from Show Low in October of 2003 in Ms. Morones' vehicle. Id., Exh. F at 110-14. She testified her intent in going to Phoenix was to earn money dancing at an adult nightclub. See id., Exh. F at 112-14.

The co-participants' testimony on some of the events of October 23, 2000, and their testimony about the intent underlying some of their actions did not agree. Ms. Morones testified that, while in Phoenix, the male co-participants discussed committing a robbery. Id., Exh. F at 115-16. Ms.

---

[1] Mr. Harris was not, at the time of Petitioner's trial, charged with a crime regarding the events he testified to at Petitioner's trial. Answer, Exh. I at 47. However, because Mr. Harris was implicated in the criminal events of that evening by his own sworn testimony, for the sake of ease and clarity, the Court will refer to Mr. Harris as a co-participant.

Morones testified that, on October 23, 2003, she had intended to "hustle" a gentleman whom she met at a nightclub.  Id., Exh. F at 118, 139.  Mr. Harris testified that, on October 23, 2000, he, Petitioner, and Ms. Morones planned a robbery involving a victim Ms. Morones would contact at a nightclub.  Id., Exh. F at 40-41.

Mr. Harris and Ms. Morones both testified Petitioner was in possession of a .40 caliber gun on October 23, 2000.  Id., Exh. F at 38, 46, 55.  Mr. Harris and Ms. Morones both testified Ms. Morones possessed a .38 caliber gun on the night in question.  Id., Exh. F at 38 & 128.

Ms. Morones and Mr. Harris testified Ms. Morones made contact with Mr. David Hull at a Phoenix nightclub.  Id., Exh. F at 117.  They testified Ms. Morones then called the other two co-participants, who were at a Scottsdale hotel, to let them know she was leaving the nightclub with Mr. Hull.  Id., Exh. F at 117.[2]  Mr. Harris and Petitioner traveled from the hotel to the nightclub in Ms. Morones' car, where they made their presence known to Ms. Morones.  Id., Exh. F at 118-19.

Ms. Morones and Mr. Hull left the nightclub in Mr. Hull's car, and were followed by Mr. Harris and Mr. Williams in Ms. Morones' vehicle.  See id., Exh. F at 45-46; 120-21.  Mr.

_____

[2] Ms. Morones testified she called "to let them know I wouldn't be at the club, to pick me up somewhere else because I couldn't return back to the club....  I was going to go do what I would call a hustle, make some money, a few hundred dollars quick, that I wanted him to be at that address within an hour, hour and a half, to not leave me there because I can't return back to the club." Answer, Exh. F at 118-19.

Hull realized he was being followed, slowed his vehicle to allow the other vehicle to pull alongside his car, and then pulled ahead, executed a U-turn, and stopped his car. Id., Exh. F at 120-23.

Mr. Harris testified Mr. Hull's car stopped and Ms. Morones exited Mr. Hull's car and pointed her gun at Mr. Hull. Id., Exh. F at 47-48. Mr. Harris testified Petitioner exited the other vehicle and approached the driver's side window of Mr. Hull's vehicle and pointed a gun at Mr. Hull. Id., Exh. F at 47-49. Mr. Harris testified he heard a shot and the victim's car accelerated. Id., Exh. F at 47-49. Mr. Harris testified he believed Petitioner fired a shot that hit Mr. Hull. Id., Exh. F at 50.

Ms. Morones testified that, when Mr. Hull initially stopped his car she tried to immediately exit the vehicle but could not get out of the car. Id., Exh. F at 123. She testified Petitioner approached the driver's side of the vehicle with a gun. Id., Exh. F at 123. Ms. Morones averred she got "halfway out" of the car, and then Petitioner told Mr. Hull to "freeze." Id., Exh. F at 123. She testified "[t]he gun [held by Petitioner] went off." Id., Exh. F at 123. She testified she was "halfway out of the car" when Mr. Hull was shot. Id. at 124.

Both Ms. Morones and Mr. Harris testified that when Mr. Hull was shot or immediately afterwards his car accelerated and crashed after hitting an obstacle. Id., Exh. F at 51 & 124. Mr. Harris testified Petitioner subsequently stated "'I shot

-4-

him.  I shot him.'"  _Id._, Exh. F at 52.  Ms. Morones testified

Petitioner subsequently stated: "Yeah, that's how you do it.  No

witnesses."  _Id._, Exh. F at 125.

Mr. Harris testified Ms. Morones instructed Petitioner

to go to Mr. Hull's vehicle and take his wallet.  _Id._, Exh. F at

52 ("Carissa was yelling, 'Grab the wallet.  Get it.'").  Both

co-participants testified Petitioner then approached the crashed

vehicle and removed Mr. Hull's wallet from his person through

the window of the crashed vehicle.  _Id._, Exh. F. at 52-53 & 125-

26.  The three participants then fled in Ms. Morones' car.

Mr. Harris testified Ms. Morones removed $300 from the

victim's wallet and stuffed the money in her bra.  _Id._, Exh. F

at 52-53.  Ms. Morones testified there was money in the wallet,

that she did not know how much money was in the wallet, and that

Petitioner removed from the money from the wallet and kept the

money.  _Id._, Exh. F at 126-27.

Mr. Hull died from his injuries approximately one month

later, on November 28, 2000.  _Id._, Exh. N at 6.  At Petitioner's

trial, the police officer who initially responded to the crash

testified Mr. Hull told the officer, at the scene of the crash,

that he'd been shot by a black or Hispanic male.  _Id._, Exh. F at

29.  A police detective testified he had interviewed Mr. Hull,

who was then intubated and unable to speak, at a hospital on

October 27, 2000.  _Id._, Exh. G at 34-35.  The detective

testified Mr. Hull conveyed to him, through written notes in

response to questions by the detective, that the victim left a

Phoenix nightclub with a female on the night in question.  _Id._,

Exh. G at 35-38.  Mr. Hull indicated the driver of the car that followed his vehicle from the nightclub was "a huge individual." Id., Exh. G at 38.

The detective testified Mr. Hull "scribbled a note here that the individual that actually did the shooting was a Hispanic or a light-complected black male."  Id., Exh. G at 38. He indicated to the detective he had approximately $400 in his wallet at the time of the shooting.  Id., Exh. G at 42.

A forensic witness testified at Petitioner's trial that Mr. Hull was shot with a .40 caliber gun.  Id., Exh. G at 85-86. The forensic witness testified a gun identified as being in Petitioner's possession on October 23, 2000, could not be excluded or positively identified as the .40 caliber gun which was used to shoot Mr. Hull.  Id., Exh. G at 85.

Another witness testified that, on the night in question, he heard a car crash and then observed a Hispanic male about five feet seven or five feet eight inches tall lean into the victim's car.  Id., Exh. H at 11-16.  The witness testified he saw the Hispanic male then get into another vehicle, later identified as Ms. Morones' vehicle, and drive away.  Id., Exh. H at 11-16.

Both Ms. Morones and Mr. Harris were vigorously cross-examined by Petitioner's counsel, who noted their interest in implicating Petitioner as having planned to commit a robbery and as the shooter, and the inconsistencies in their prior statements and their trial testimony.  See id., Exh. F (passim). Counsel elicited an admission from Mr. Harris that, prior to

-6-

Petitioner's trial, he had never stated to the police or testified that Petitioner and Mr. Harris and Ms. Morones had planned to commit a robbery. Id., Exh. F at 65, 75, 106. After Mr. Harris' testimony, Petitioner's counsel moved for a mistrial based on inconsistencies in Mr. Harris' previous sworn statement at a preliminary hearing and his trial testimony, which motion was denied. Id., Exh. G at 3-8.

On January 14, 2003, after deliberating less than one day, a jury found Petitioner guilty of first-degree felony murder, predicated on the commission of a robbery. Id., Exh. I at 72.

The trial court heard testimony on aggravating and mitigating factors regarding Petitioner's sentence. Id., Exh. J. The government alleged as aggravating factors Petitioner's commission of the crime for pecuniary gain and the crime's commission in a cruel, heinous and depraved manner. Id., Exh. J at 9.

Petitioner's cousin spoke on his behalf at the aggravation and mitigation hearing. Id., Exh. J at 5-6. Petitioner's counsel argued mitigation in the form of strong family support and the disparity between Petitioner's sentence and the disposition of the co-participants. Id., Exh. J at 10. Petitioner spoke on his own behalf, asserting he had not committed the crime charged. Id., Exh. J at 11-12.

The trial court then found "there [were] very substantial aggravating factors involved, and they are for pecuniary gain; accomplice; the emotional injury caused to the

-7-

1  family; the senselessness of the act; and the prior felony

2  convictions." <u>Id.</u>, Exh. J at 12.

3          Petitioner's counsel objected to this statement:

4          I would, just for the record, object to the
           Court's consideration of any aggravating
5          factors not enumerated under 13-703, under
           <u>State v. Viramontes</u>, 390 Arizona Advanced
6          Reports 3, 2003. Specifically, I believe the
           Court articulated the presence of an
7          accomplice, the emotional impact on the
           victim's family, and Mr. Williams' prior
8          felony convictions, which do not qualify
           under 13-703, and as to those factors I
9          object to the consideration of them.

10 <u>Id.</u>, Exh. J at 14.

11         The government agreed with defense counsel's statement

12 regarding permissible aggravating factors.  <u>Id.</u>, Exh. J at 15.

13 The trial court confessed error in considering the forbidden

14 aggravating factors, stated it was eliminating those factors

15 from consideration, and concluded "a sentence of natural life is

16 appropriate for the reasons" stated by the government.  <u>Id.</u>,

17 Exh. J at 15.

18         On May 2, 2003, Petitioner was sentenced to a term of

19 life imprisonment without the possibility of parole for this

20 crime.  <u>Id.</u>, Exh. J.

21         Petitioner took a direct appeal of his conviction and

22 sentence.  Petitioner asserted on appeal that: (1) the trial

23 court erred by allowing the prosecution to strike three Hispanic

24 veniremen for "wholly subjective" reasons without further

25 inquiry; (2) the trial court improperly admitted hearsay

26 evidence, i.e., the statements of the victim through the

27 testimony of the police detective; (3) his sentence was improper

28                                    -8-

because the court improperly found he had committed the crime in a cruel, heinous, or depraved manner; the court erred in concluding Petitioner would be eligible for sentence commutation; and Petitioner did not receive proper credit for his presentence incarceration.  Id., Exh. K.

The Arizona Court of Appeals affirmed Petitioner's conviction and sentence in an opinion issued April 22, 2004. Id., Exh. N.  The Court of Appeals concluded the trial court did not err in determining the prosecution had presented race-neutral reasons for excluding three of the four Hispanic venire members.  Id., Exh. N at 7-11.  The Court of Appeals examined Petitioner's claim pursuant to the analysis stated in Batson v. Kentucky, 476 U.S. 79 (1986) and concluded the prosecution had stated race-neutral reasons for challenging the specific potential jurors, citing Purkett v. Elem, 514 U.S. 765, 767-768 (1995) (concluding a race-neutral reason for striking a juror need not be "persuasive, or even plausible" to withstand scrutiny).  The Court of Appeals noted a venire member's age and employment history, the given reasons for the suspect strikes, were objective factors and that the trial judge had agreed a third juror should be removed because she "wasn't really getting it."  Id., Exh. N at 11.

The Arizona Court of Appeals determined that admitting the hearsay evidence of the victim's statements did violate Petitioner's Sixth Amendment right to confront a witness. However, the Court of Appeals concluded this error was harmless. The Court of Appeals determined the hearsay evidence did not

-9-

affect the jury's verdict, *inter alia,* because other evidence was offered to establish Petitioner was the shooter, rather than Mr. Harris or Ms. Morones. <u>Id.</u>, Exh. N at 15-17. The Court of Appeals noted evidence supporting the fact that on the night in question Petitioner possessed a .40 caliber gun, the type of gun used to shoot the victim. <u>Id.</u>, Exh. N at 17. The Court of Appeals noted a witness testified they saw a Hispanic male about five foot seven inches tall reach into the victim's car after it crashed, providing dis-interested supporting evidence that Petitioner, rather than his co-participants, committed the robbery underlying the felony murder charge. <u>Id.</u>, Exh. N at 16-17.

Regarding Petitioner's claim his sentence was improperly aggravated based on a non-statutory aggravating factor, the appellate court concluded that, even if the trial court erred by sentencing Petitioner based on an improper aggravating factor, the record "amply support[ed]" the conclusion the crime was committed for monetary gain, a proper aggravating factor which would support the sentence imposed and which any re-sentencing judge would likely use as a basis for imposing the same sentence. <u>Id.</u>, Exh. N at 20-21. The court noted the trial court's comments regarding commutation were directed at the victim's family, and that, because Petitioner had been sentenced to "natural life," his claim to credit for presentence incarceration was a legal misnomer. <u>Id.</u>, Exh. N at 21-22 & n.14.

The Arizona Supreme Court denied review of this decision on September 22, 2004.  _Id._, Exh. Q.

Petitioner filed an action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure on August 26, 2004.  _Id._, Exh. P.  Petitioner, through counsel, asserted he was entitled to relief from his sentence based on the United States Supreme Court's opinion in _Blakely v. Washington_, 542 U.S. 296, 124 S. Ct. 2531 (2004).  _Id._, Exh. R. The petition was denied by the trial court on June 27, 2005. _Id._, Exh. U. The trial court's opinion states in its entirety:

> The court has reviewed the entire Post-Conviction Relief package.
> IT IS ORDERED summarily dismissing the Petition.
> The court agrees with the State that the law as it presently provides compels dismissal. _State v. Fell_, 209 Ariz. 77, 97 P.3d 902, (App. 2004), _review granted_, March 22, 2005, and _State v. Martinez_, 209 Ariz. 280, 100 P. 3d 30 (App. 2004), _review granted_, February 8, 2005.

_Id._, Exh. U.

The Arizona Court of Appeals denied review of this decision on April 27, 2006.  _Id._, Exh. X.

Petitioner filed a second action for post-conviction relief in the Arizona Superior Court on April 19, 2006, asserting a claim his co-defendant had given perjured testimony and that he was deprived of the effective assistance of counsel. _Id._, Exh. W.  This action was dismissed because the court concluded the claims were precluded, on May 10, 2006.  _Id._, Exh. Y.

1   Petitioner asserts he is entitled to federal habeas
2   relief because: (1) his co-defendant was allowed to give
3   perjured testimony, in violation of his right to due process of
4   law; (2) he was denied a jury of his peers because the
5   prosecutor used peremptory challenges to exclude Hispanic
6   individuals from the jury; (3) his sentence was improper, i.e.,
7   premised on facts found by the judge and not a jury and because
8   he was not given credit for time served prior to conviction; (4)
9   his Sixth Amendment right to confront a witness against him was
10  violated when the trial court allowed hearsay testimony.

11  Respondents contend Petitioner did not properly exhaust
12  his first and third habeas claims by fairly presenting them to
13  Arizona's highest court, i.e., the Arizona Supreme Court, in a
14  procedurally correct manner.   Respondents argue the other two
15  claims may be denied on the merits.

16  **II Analysis**

17  **Exhaustion**

18  A state prisoner must "exhaust" a claim in the state
19  courts before the District Court may grant federal habeas relief
20  on the merits of the claim.   See Coleman v. Thompson, 501 U.S.
21  722, 729-30, 111 S. Ct. 2546, 2554-55 (1991); Castille v.
22  Peoples, 489 U.S. 346, 349, 109 S. Ct. 1056, 1059 (1989).   To
23  properly exhaust a claim in the state courts, the petitioner
24  must afford the state the opportunity to rule upon the merits of
25  the claim by "fairly presenting" the claim to the state's
26  "highest" court in a procedurally correct manner. Castille, 489
27  U.S. at 351, 109 S. Ct. at 1060; Kim v. Villalobos, 799 F.2d

28  -12-

1317, 1319 (9th Cir. 1986).  A federal habeas petitioner has not exhausted a particular claim if he has the right to raise the claim "by any available procedure" in the state courts.  28 U.S.C. § 2254(c) (1994 & Supp. 2006).  Therefore, if it is clear the habeas petitioner's claim is now procedurally barred under state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.

The Ninth Circuit Court of Appeals has concluded that, in Arizona, in the context of a petitioner who has not been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented the claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).  See also Castillo v. McFadden, 399 F.3d 993, 998 n.3 (9th Cir.), cert. denied, 126 S. Ct. 348 (2005).

Petitioner was sentenced to life imprisonment without the possibility of parole, therefore, his federal habeas claims would be properly exhausted if he presented them to the Arizona Court of Appeals.  See Swoopes, 196 F.3d at 1009; Beyart v. Schriro, 2006 WL 1305275, at *3 n.2 (D. Ariz.) ("Arizona law no longer requires that a life sentence case be appealed to the Arizona Supreme Court.").

Respondents contend, *inter alia*, that Petitioner did not completely exhaust his third claim for federal habeas relief, i.e., his Blakely claim, because he did not seek review of this claim by the Arizona Supreme Court.  Respondents argue the opinion in Swoopes was effectively overruled by Baldwin v.

-13-

<u>Reese</u>, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (*including a state supreme court with powers of discretionary review*), thereby alerting that court to the federal nature of the claim."(emphasis added)) .

Because the Arizona Court of Appeals considered and rejected Petitioner's <u>Blakely</u> claim on the merits, and the <u>Blakely</u> claim may be denied on the merits regardless of any alleged failure to fully exhaust the claim,[3] the Court will not analyze Respondents' argument regarding the continued vitality of <u>Swoopes</u> subsequent to the decision in <u>Baldwin</u>.[4]

**Petitioner's claims for relief**

**1. Petitioner asserts he is entitled to federal habeas relief because Mr. Harris offered perjured testimony at Petitioner's trial.**

Petitioner contends his right to due process was violated because Mr. Harris "gave several conflicting statements ... [and] lied repeatedly on the stand and the judge allowed it even after said witness admitted to perjury." Petition at 5. Petitioner contends: "This witness should have been precluded or

---

[3] Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for federal habeas relief. However, section 2254 now allows: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (1994 & Supp. 2006).

[4] The Court notes Respondents raise this argument to preserve it for appeal and that the District of Arizona has previously rejected the argument. <u>See</u> <u>Reese v. Savage</u>, 2006 WL 1516020, at *3 (D. Ariz.); <u>Crook v. Arizona</u>, 2005 WL 3455110, *3 n.2 (D. Ariz.).

impeached on the witness stand.   The witness was coerced into confessing to the crime and testifying against the Petitioner..." <u>Id.</u>  Petitioner contends he raised this issue in his direct appeal.

Petitioner did not present this claim to the Arizona state courts in his direct appeal or in his first Rule 32 action.   Petitioner raised this claim in his second Rule 32 action and the Arizona Superior Court found the claim procedurally precluded by Petitioner's failure to raise the issue in his direct appeal or in his first Rule 32 action.

Procedural default occurs when a petitioner raises a claim in the state court, but the court finds the claim to be defaulted on procedural grounds. <u>Coleman</u>, 501 U.S. at 730-31, 111 S. Ct. at 2555-56.   The state's procedural bar satisfies the federal habeas exhaustion requirement, however it also provides an independent and adequate state-law basis for upholding a petitioner's conviction and sentence. See <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("... the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons"); <u>Correll v. Stewart</u>, 137 F.3d 1404, 1417 (9th Cir. 1998).   See also <u>Stewart v. Smith</u>, 536 U.S. 856, 860-61, 122 S. Ct. 2578, 2581-82 (2002) (concluding that a state court's finding that a post-conviction claim was barred as waived, pursuant to Rule 32.2(a)(3), Arizona Rules of Criminal Procedure, was a decision independent of federal law and adequate to bar federal review of

1  state prisoner's federal habeas claim on the merits).

2     Federal habeas review of a procedurally defaulted claim
3  is barred unless the petitioner can demonstrate a miscarriage of
4  justice, or cause and actual prejudice to excuse his default of
5  the claim.  See Coleman, 501 U.S. at 750-51, 111 S. Ct. at
6  2555-56.  "Cause" is a legitimate excuse for the petitioner's
7  procedural default and "prejudice" is actual harm resulting from
8  the alleged constitutional violation.  See Thomas v. Lewis, 945
9  F.2d 1119, 1123 (9th Cir. 1991).  To demonstrate cause, a
10 petitioner must show the existence of some external factor which
11 impeded his efforts to comply with the state's procedural rules.
12 See Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir.
13 1996).  To establish prejudice, the petitioner must show that
14 the alleged error "worked to his actual and substantial
15 disadvantage, infecting his entire trial with error of
16 constitutional dimensions."  United States v. Frady, 456 U.S.
17 152, 170, 102 S. Ct. 1584, 1595 (1982).  See also Correll, 137
18 F.3d 1415-16.  Petitioner must prove that, "but for" the alleged
19 constitutional violations, there is a reasonable probability he
20 would not have been convicted of the same crime.  See Manning v.
21 Foster, 224 F.3d 1129, 1135 (9th Cir. 2000); Ivy v. Caspari, 173
22 F.3d 1136, 1141 (8th Cir. 1999).

23    Review of the merits of a procedurally defaulted habeas
24 claim is also appropriate if the petitioner demonstrates review
25 of the merits of his claim is necessary to prevent a fundamental
26 miscarriage of justice.  See Schlup v. Delo, 513 U.S. 298, 327,
27 115 S. Ct. 851, 867 (1995); Murray v. Carrier, 477 U.S. 478,

28                 -16-

485-86, 106 S. Ct. 2639, 2649 (1986). A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, Petitioner must establish by clear and convincing evidence that no reasonable juror could have found him guilty of the offense of first-degree felony murder. See Schlup, 513 U.S. at 327, 115 S. Ct. at 867; Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

Additionally, even if Petitioner asserted a claim of actual innocence as excusing his procedural default of his due process claim, federal habeas relief may not be granted on this assertion absent a finding of an independent constitutional violation occurring in the state criminal proceedings. Dretke v. Haley, 541 U.S. 386, 393-94, 124 S. Ct. 1847, 1852 (2004); Herrera v. Collins, 506 U.S. 390, 400-01, 113 S. Ct. 853, 860-61 (1993).

Petitioner has not shown cause for, or prejudice arising from his procedural default of this claim. Neither has Petitioner shown a fundamental miscarriage of justice and, therefore, the claim must be dismissed.

1    **2.   Petitioner alleges he was denied his right to a**
**jury of his peers because Hispanic veniremen were peremptorily**
2    **stricken from the jury.**

3         Petitioner alleges "all" Hispanic venire members were

4    stricken from the jury "on frivolous grounds," in violation of

5    his right to a jury of his peers.  Petition at 6.   Petitioner

6    properly exhausted this claim by fairly presenting it to the

7    Arizona Court of Appeals in his direct appeal, which court

8    denied the claim on the merits.

9         The Court may not grant a writ of habeas corpus to a

10   state prisoner on a claim adjudicated on the merits in state

11   court proceedings unless the state court reached a decision

12   contrary to clearly established federal law, or one involving an

13   unreasonable application of clearly established federal law, or

14   unless the state court decision was based on an unreasonable

15   determination of the facts in light of the evidence presented in

16   the state court proceeding.  See 28 U.S.C. § 2254(d) (1994 &

17   Supp. 2006).

18              A state court's decision is "contrary to" our
               clearly established law if it applies a rule
19             that contradicts the governing law set forth
               in our cases or if it confronts a set of
20             facts that are materially indistinguishable
               from a decision of this Court and
21             nevertheless arrives at a result different
               from our precedent.
22

23   Mitchell v. Esparza, 540 U.S. 12, 14, 124 S. Ct. 7, 10 (2003)

24   (internal citations and quotations omitted).

25        When reviewing a habeas claim, the federal courts must

26   afford great deference to the state court's rulings with regard

27   to issues raised in the petitioner's federal habeas action.  See

28                                -18-

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S. Ct. 357, 359-60 (2002).   "An unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u>, 537 U.S. at 25, 123 S. Ct. at 360 (internal quotations omitted). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" <u>Wiggins v. Smith</u>, 539 U.S. 510, 123 S. Ct. 2527, 2535 (2003) (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S. Ct. 1166, 1175 (2003).   <u>See also</u> <u>Brown v. Payton</u>, 125 S. Ct. 1432, 1439-40 (2005) ("Even on the assumption that [the state court's] conclusion was incorrect, it was not unreasonable, and is therefore just the type of decision that AEDPA shields on habeas review.").

The Arizona Court of Appeals concluded Petitioner's right to a fair jury was not violated by the prosecution's use of peremptory strikes to remove Hispanic individuals from the jury panel.   The Court of Appeals identified the appropriate governing legal principle, i.e., the United States Supreme Court's decisions in <u>Batson</u> and <u>Purkett</u>.   The Court of Appeals properly concluded the prosecution had stated race-neutral grounds for striking the jurors and, therefore, the state court's denial of relief on this basis was not clearly contrary to established federal law.   See <u>J.E.B. v. Alabama</u>, 511 U.S. 127, 142 n.14, 114 S. Ct. 1419, 1428 n.14 (1994) (finding that peremptory challenges made on the basis of a characteristic other than race or gender (such as occupation) do not implicate

the Equal Protection clause); <u>Jordan v. LeFevre</u>, 206 F.3d 196, 200 (2d Cir. 2000) (concluding the juror's "type of employment" is an acceptable race-neutral basis for a peremptory challenge). Because the state decision was not clearly contrary to federal law, Petitioner is not entitled to federal habeas relief on this claim.

**3.   Petitioner contends his sentence is predicated on an aggravating factor found by a judge and not a jury, in violation of the holding of <u>Blakely</u>.**

Petitioner contends his sentence violates his constitutional rights, asserting:

> The sentencing was unlawful as the judge without benefit of a jury or Petitioner admitting to aggravating factors, used aggravating factors to sentence Defendant to natural life.  Also the court believed that the Petitioner would be eligible for commutation and did not give Petitioner any pre-sentence incarceration credit.

Petition at 7.

The Arizona Superior Court considered the merits of this claim in Petitioner's first action for post-conviction relief and denied the claim.   The Superior Court relied on <u>Arizona v. Fell</u> and <u>Arizona v. Martinez</u> in concluding Petitioner's constitutional rights, as explained in <u>Blakely</u>, had not been violated.

In <u>Fell</u>, the Arizona Court of Appeals concluded:

> [W]e hold that <u>Blakely</u> does not apply to a trial court's decision whether to sentence a defendant convicted of first-degree murder to a term of natural life imprisonment or life with the possibility of parole. ... both options are indeterminate sentencing alternatives in § 13-703(A), variations, as it were, on a life term of imprisonment.

> *Either alternative may be imposed based solely on the jury's guilty verdict, without additional findings.*
> Neither the statute nor case law requires a sentencing judge to enter factual findings on the aggravating or mitigating factors in this context. <u>Compare</u> § 13-703 (containing no language requiring findings of fact on circumstances judge considers in imposing prison term of natural life or life with the possibility of parole) <u>with</u> § 13-702(B) (requiring factual findings on aggravating or mitigating factors); [] And, we find both unsupported and unpersuasive [the defendant's] suggestion that a life term of imprisonment with the possibility of parole is the "presumptive" prison term in this context or the "statutory maximum" for purposes of <u>Blakely</u> and that a natural life term is tantamount to an aggravated, upward adjustment from that presumptive term.

209 Ariz. 77, 86, 97 P.3d 902, 910-11, <u>aff'd</u>, 210 Ariz. 554 (2005).

Similarly, in <u>Martinez</u>, the Arizona Court of Appeals concluded:

> In <u>Blakely</u>, the Court specifically distinguished the situation where judicial sentencing factors merely impact the minimum punishment available from that where they increase the maximum punishment above that authorized by the verdict. [] It is only in the latter case that a defendant's due process right to trial by jury is implicated. <u>See Harris v. United States</u>, 536 U.S. 545, 567, 122 S. Ct. 2406 [] (2002)[]. *Because a guilty verdict for first-degree murder authorizes the court to impose a life sentence either with or without the possibility of release, the court may properly consider the statutory sentencing factors, without the need for jury findings regarding those factors, in deciding whether to allow the possibility of release.* <u>See</u> ... <u>State v. Fell</u>, 209 Ariz. 77, 86, ¶ 29, 97 P.3d 902, 911 (App. 2004) ("<u>Blakely</u> does not apply to a trial court's decision whether to sentence a defendant convicted of first-degree murder to a term of natural life

> imprisonment or life with the possibility of
> parole.").
> The trial court properly decided whether
> defendant would be eligible for release after
> twenty-five years in conformance with <u>State
> v. Viramontes</u>, 204 Ariz. 360, 64 P.3d 188
> (2003). There was no error in the court's
> imposition of the natural life sentence, much
> less fundamental error.

<u>Arizona v. Martinez</u>, 209 Ariz. 280, 283-84, 100 P.3d 30, 33-34 (Ct. App. 2004), <u>cert.</u> <u>denied</u>, 126 S. Ct. 762 (2005) (emphasis added).

The Court concludes the Arizona Superior Court did not err in denying Petitioner's <u>Blakely</u> claim, and the Court of Appeals properly denied review of this decision. Additionally, had the Arizona courts erred in their interpretation of <u>Blakely</u>, the United States Supreme Court could have accepted certiorari in <u>Martinez</u> to consider the issue. The state courts' conclusion that Petitioner's sentence did not violate his constitutional rights was not clearly contrary to, nor an unreasonable application of federal law, particularly <u>Blakely</u>. Therefore, Petitioner is not entitled to federal habeas relief on this claim.

Additionally, the claim may be denied on the merits. The United States constitution allows that sentencing factors may be found by a judge, rather than a jury, when the sentence imposed is not greater than what state law authorizes "on the basis of the verdict alone." <u>Blakely</u>, 542 U.S. at 305, 124 S. Ct. at 2538. Therefore, if the jury verdict alone provided Petitioner could be sentenced to a term of natural life, Petitioner's constitutional rights were not violated.

-22-

At the time Petitioner was sentenced, the Arizona statutes provided "[a] defendant convicted of first-degree murder faces three possible sentences: death, a life sentence with release eligibility after 25 years, or a sentence of 'natural life' with no possibility of release." <u>Arizona v. Guytan</u>, 192 Ariz. 514, 523-24, 968 P.2d 587, 596-97 (Ct. App. 1998) (internal citation omitted). The Arizona courts have interpreted the law applicable at the time of Petitioner's sentencing as allowing an individual convicted of first-degree murder to be sentenced to natural life "based solely on the jury's guilty verdict, without additional findings." <u>See Fell</u> 97 P.3d at 910.[5] This interpretation of state law is binding on this Court. The Supreme Court "has repeatedly held that a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 126 S. Ct. 602, 604 (2005). Because, as a matter of law, the jury's verdict of guilty of first-degree felony murder, without further findings, provided a sufficient factual basis for the sentence imposed on Petitioner, he is not entitled to federal habeas relief on the merits of his <u>Blakely</u> claim.

---

[5] <u>See</u> <u>Arizona v. Viramontes</u>, 211 Ariz. 115, 115, 118 P.3d 630, 630 (Ct. App. ) ("regardless of whether the state seeks the death penalty, a trial court in a first-degree murder case should sentence the defendant pursuant to A.R.S. § 13-703 rather than A.R.S. § 13-702").

-23-

**4. Petitioner contends he is entitled to federal habeas relief because the trial court improperly admitted hearsay testimony.**

Petitioner asserts his Sixth Amendment rights were violated by the admission of hearsay testimony at his trial. Petition at 8.

The Arizona Court of Appeals' determined Petitioner's Sixth Amendment rights were violated by the admission of the challenged testimony, but that the error was harmless. This conclusion was not contrary to clearly established federal law because the trial court correctly identified the governing rule, i.e., the harmless error rule, and its application of the rule to the facts of the case was not unreasonable. See Inthavong v. Lamarque, 420 F.3d 1055, 1061 (9th Cir. 2005), cert. denied, 126 S. Ct. 1660 (2006) ("Under AEDPA we must defer to the state court's harmless error ruling unless it is 'contrary to, or involve[s] an unreasonable application of' Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The state court's harmless error holding is 'contrary' to precedent if it 'fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.'").

To be entitled to habeas relief on a claim or erroneous admission of evidence, the petitioner must demonstrate the error had a substantial and injurious effect in determining the jury's verdict. See Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S. Ct. 1710, 1721-22 (1993); Delaware v. Van Arsdall, 475 U.S. 673,

1  679, 106 S. Ct. 1431, 1435 (1986); <u>Cummings v. Adams</u>, 172 Fed.

2  App. 188, 190 (9th Cir. 2006), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u>, No. 05-

3  10923 (May 5, 2006); <u>Christian v. Rhode</u>, 41 F.3d 461, 468 (9th

4  Cir. 1994).

> Under this standard, an error is harmless
> unless the record review leaves the
> conscientious judge in grave doubt about the
> likely effect of an error on the jury's
> verdict ... i.e., that, in the judge's mind,
> the matter is so evenly balanced that he
> feels himself in virtual equipoise as to the
> harmlessness of the error.

10  <u>Padilla v. Terhune</u>, 309 F.3d 614, 621-22 (9th Cir. 2002)

11  (regarding erroneous admission of non-testifying co-defendant's

12  out-of-court statement) (internal citations and quotations

13  omitted).

14        The record before the Court indicates overwhelming

15  evidence that Petitioner was guilty of the crime of felony

16  murder, i.e., committing a robbery which resulted in the death

17  of another. Although the co-participants' testimony diverged on

18  some points, both testified Petitioner shot the victim and

19  removed the wallet from the victim after the car crash. The

20  fact that Petitioner committed the robbery was corroborated by

21  the dis-interested bystander witness who testified he saw

22  someone of Petitioner's height and race, which description did

23  not fit Mr. Harris, reach into the victim's car after it

24  crashed. In addition to the co-participants' arguably self-

25  serving testimony, the allegation that Petitioner was the actual

26  shooter is supported by evidence the victim was shot with a .40

27  caliber gun and that, on the night in question, Petitioner

28                                -25-

possessed a .40 caliber gun, while one co-participant possessed a .38 caliber gun and the other co-participant was not armed. The Court concludes the Court of Appeals' decision was not contrary to clearly established federal law because the allegedly improper evidence did not clearly have a substantial and injurious effect on the jury's verdict, given the weight of other evidence of guilt.

### III Conclusion

Petitioner failed to exhaust his due process claim and he has not shown cause for or prejudice arising from his procedural default of this claim and, therefore, the claim must be dismissed. Petitioner's other three claims for federal habeas relief may be denied because the Arizona state courts' decisions denying these claims were not an unreasonable application of federal law. Additionally, Petitioner's <u>Blakely</u> claim may be denied on the merits, regardless of Petitioner's alleged failure to properly exhaust this claim.

**IT IS THEREFORE RECOMMENDED** that Mr. Williams' Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of

service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 15th day of August, 2006.


_____
Mark E. Aspey
United States Magistrate Judge

-27-